IMPORTANT NOTICE: COURTESY COPIES OF DOCUMENTS YOU FILE SHOULD <u>NOT</u> BE PROVIDED TO ANY JUDGE. ALL COMMUNICATIONS WITH THE COURT SHALL <u>ONLY</u> BE THROUGH DOCUMENTS FILED WITH THE CLERK OF COURT.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| ANTHONY MCQUEEN | DOCKET NO. 10-CV-0847; SEC. P |
| VERSUS | JUDGE DEE D. DRELL |
| FEDERAL BUREAU OF PRISONS, ET AL. | MAGISTRATE JUDGE JAMES D. KIRK |

### REPORT AND RECOMMENDATION

Plaintiff Anthony McQueen filed the instant civil rights complaint pro se and *in forma pauperis* on May 7, 2010, pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)[1]. Plaintiff is an inmate in the custody of the Federal Bureau of Prisons (BOP), and he is currently incarcerated at the Metropolitan Detention Center (MDC) in Brooklyn, New York. He claims that he was denied proper medical care at the United States Penitentiary in Pollock, Louisiana and at his current facility MCD Brooklyn. He names as defendants: Bureau of Prisons, Harley Lappin, Harrell Watts, G. Maldonado, Jr., Dr. TeCora Ballom, Joe Keffer, Dr. Joel D. Alexandre, Mr. Smith, and Charles Tisdale.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

---

[1] "A Bivens action is analogous to an action under § 1983-the only difference being that § 1983 applies to constitutional violations by state, rather than federal officials." <u>Evans v. Ball</u>, 168 F.3d 856, 863 n. 10 (5th Cir.1999).

## Plaintiff's Allegations

Plaintiff alleges the following in his thorough complaint and accompanying exhibits:

- May 27, 2008 - Plaintiff reported to sick call complaining of cloudiness and loss of vision in his right eye. Mr. Nordstrom recommended that Plaintiff be seen by an optometrist.

- June 2, 2008 - Plaintiff notified via prison mail of upcoming eye examination.

- June 20, 2008 - Optometrist Dr. Mark Bowen recommended that Plaintiff be examined by an ophthalmologist for cataract removal.

- June 30, 2008 - Plaintiff received notice of approval for on-site surgery consultation.

- September 18, 2008 - Plaintiff received notice that he was scheduled for surgery the next day. *(Apparently this surgery never took place)*

- October 20, 2008 - Plaintiff reported to sick-call for complaints related to the cataract. Physician Assistant Charles Tisdale instructed Plaintiff to return the next day, which Plaintiff did, at which time he was denied medical care.

- October 22, 2008 - Plaintiff filed BP-8

- November 21, 2008 - Plaintiff filed BP-9

- December 11, 2008, Plaintiff received a response to his request for administrative remedy from the warden's office stating that a follow-up appointment with the optometrist had been approved and was awaiting scheduling.

- December 31, 2008 - Plaintiff filed a BP-10 with the regional office.

- January 7, 2009 - Plaintiff reported to sick call complaining of eye pain and vision cloudiness. He was seen by Physician Assistant Nordstrom who recommended Plaintiff be referred for an ophthalmology consultation.

**The consult was approved by FCC Pollock, but had to be sent to the regional clinical director for approval.**

- January 25, 2009 - Regional director responded that, per review of Plaintiff's medical file and consultation with the assistant health services administrator, Plaintiff's BP-10 was denied.

- January 30 - Plaintiff received notice from the U.S.P. Utilization Review committee that he had been **denied the ophthalmology consultation by the regional director.**

- March 11, 2009 - Plaintiff submitted BP-11, which was denied on May 18, 2009, because Plaintiff did not meet the criteria for cataract surgery.

- March 16, 2009 - Plaintiff reported to sick call with eye pain and decreased vision. Plaintiff was examined by Physician Assistant Tisdale who referred him back to the optometrist and prescribed ibuprofen.

- April 4, 2009 - Plaintiff was examined by Dr. Bowen again. Dr. Bowen had twice referred Plaintiff to the ophthalmology clinic and opined that the cataract was worsening.

- April 20, 2009 - Plaintiff reported to sick call with eye pain and vision loss. He was examined by Physician Assistant Tisdale and prescribed Ibuprofen.

- June 5, 2009 - Plaintiff reported to sick call with eye pain and further vision loss. He was examined by Tisdale and prescribed Ibuprofen.

- July 6, 2009 - Plaintiff reported to sick call with eye pain and vision loss. He was examined by Tisdale and prescribed Ibuprofen. Plaintiff spoke with Mr. Smith about possibly having Plaintiff's family pay for the cataract surgery.

- July 13, 2009 - Plaintiff reported to sick call with eye pain and vision loss. He was examined by Physician Assistant Vasquez. Vasquez stated that he was unaware Plaintiff had not seen the ophthalmologist.

- July 17, 2009 - Plaintiff reported for a medical consultation with Dr. Joel Alexandre, an ophthalmologist, who opined that surgery would not help Plaintiff's

      vision.

- August 18, 2009 - Plaintiff submitted a Freedom of Information Act request for a copy of the regional response on elective ophthalmology procedures.

- September 29, 30 and October 2, 2009 - USP-P on lock down. Plaintiff submitted sick call requests for eye pain and vision loss, but his requests were ignored.

- October 13, 2009 - Plaintiff reported to sick call with eye pain and vision loss. Vasquez examined Plaintiff, placed Plaintiff's name on a list to see a new optometrist, and prescribed Ibuprofen.

- November 16, 2009 - Plaintiff transferred to MDC Brooklyn.

A copy of an **email from the regional medical director's office indicates that Plaintiff was being denied cataract surgery because, although the records provided showed "no improvement" on refraction, there were no numbers reflecting visual acuity.** [Doc. #1, p.58/64; Exhibit W]

## Law and Analysis

### 1. Bivens

Plaintiff alleges that Defendants violated his Eighth Amendment rights by denying him cataract surgery. An action for damages may be brought against a federal official who, while acting in his or her individual capacity, violates a plaintiff's constitutional rights. See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971); Abate v. Southern Pac. Transp. Co., 993 F.2d 107, 110 (5th Cir. 1993). A *Bivens* action is basically the federal equivalent to a claim filed

4

pursuant to 42 U.S.C. §1983 against a state official for similar violations against a plaintiff. See Abate, 993 F.2d at 110 n. 14.

To state a civil rights claim for the denial of medical care, a prisoner must allege that the prison authorities were deliberately indifferent to the prisoner's serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 103-04 (1978); Hare v. City of Corinth, Miss., 74 F.3d 633, 650 (5th Cir. 1996). A prison official is liable under the Eighth Amendment for deliberate indifference to prison health and safety conditions only if he or she knows an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Farmer v. Brennan, 511 U.S. 825, 847 (1994); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). Only deliberate indifference, an "unnecessary and wanton infliction of pain ... or acts repugnant to the conscience of mankind" is proscribed by the Eighth Amendment. See Estelle v. Gamble, 429 U.S. at 105-106.

Negligence is not a basis for a civil rights action. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner," and so the prisoner must "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id., 429 U.S. at 106; see also Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006). Mere negligence or a failure to act reasonably is not enough to establish deliberate indifference; the official must have a

subjective intent to cause harm. See <u>Mace v. City of Palestine</u>, 333 F.3d 621, 625 (5th Cir. 2003). Said another way, deliberate indifference, i.e., a subjective intent to cause harm, cannot be inferred from a prison official's failure to act reasonably. See <u>Hare v. City of Corinth</u>, 74 F.3d at 649.

The Fifth Circuit has held that deliberate indifference in the context of a failure to provide reasonable medical care means that: "1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; 2) the official actually drew that inference; and 3) the official's response indicates the official subjectively intended that harm occur." <u>Thompson v. Upshur County, Tex.</u>, 245 F.3d 447, 458-459 (5th Cir. 1998)(citation omitted); <u>see</u> <u>also</u> Easter, 467 F.3d at 463; <u>Domino v. Tex. Dept. of Criminal Justice</u>, 239 F.3d 752, 756 (5th Cir. 2001). An official's knowledge of a serious risk of harm may only be inferred if the risk was obvious; it may not be inferred from a "negligent ... response to a substantial risk of serious harm." <u>Thompson</u>, 245 F.3d at 459 (citing <u>Hare</u>, 74 F.3d at 645).

### A. BOP and denial of administrative appeals

First, a *Bivens* claim is available only against government officers in their individual capacities in order to deter future civil rights violations by such individuals. See <u>Boyd v. Lasher</u>, 2010 WL 1817805 (E.D.La. 3/9/10) (citing <u>Williamson v. U.S. Dept. of Agriculture</u>, 815 F.2d 368, 380 (5th Cir. 1987). The Supreme

Court has held that there can be no *Bivens* cause of action against the United States government, a federal agency (such as the BOP), or government officers in their official capacities, because the deterrent effect on the individual would be lost. See id. (citing FDIC v. Meyer, 510 U.S. 471, 484-486 (1994)). **Therefore, Plaintiff's claim against the BOP should be dismissed.**

Plaintiff names as defendants Bureau of Prisons National Director Harley G. Lappin, Bureau of Prisons Regional Director Gregory Maldonado, and Administrator of Inmate Appeals Harrell Watts. Plaintiff named Maldonado, Lappin, and Watts because they denied his administrative appeals. However, Plaintiff does not have a federally protected liberty interest in having his grievances resolved to his satisfaction. See Geiger v. Jowers, 404 F3d. 371 (5th Cir. 2005). As he relies on a legally nonexistent interest, any alleged constitutional violation arising from the alleged failure to properly address his grievances is frivolous. Thus, no *Bivens* claim can be stated against **Harley Lappin, Harrell Watts, or G. Maldonado, Jr., and those defendants should be dismissed, also.**

B.   Dr. TeCora Ballom - Regional Medical Director

Plaintiff complains that Dr. TeCora Ballom, the Regional Medical Director for the South Central Region of the BOP, violated his constitutional rights by denying Plaintiff cataract surgery. According to the exhibits submitted by Plaintiff, the medical

7

department and utilization committee at USP-P **approved** Plaintiff for cataract surgery. [Doc. #1-4, p.21/36] However, the regional medical director, Dr. Ballom, reviewed Plaintiff's medical records and the Bureau of Prisons' ophthalmology clinical practice guidelines and determined that Plaintiff did **not** meet the criteria for cataract surgery. [Doc. #1-4, p.19/36, 25/36]

Plaintiff even obtained a copy of an email from the Regional Medical Director explaining her decision. [Doc. #1-4, p.30/36] Apparently, on or around April 29, 2009, the utilization committee forwarded Plaintiff's "elective Ophthalmology procedure form" to Dr. Ballom for review and determination. [Doc. #1-4, p.30/36] Dr. Ballom replied on June 10, 2009, that "[Plaintiff] still does not meet criteria.... Also, the record shows "no improvement" on refraction, but no numbers.  These should be indicated in the record, if obtainable, and if not, it should be so documented." [Doc. #1-4, p.30/36]

Thus, Plaintiff does not present factual allegations that this regional director, located in Fort Worth, Texas, subjectively intended to cause Plaintiff harm or that she acted with deliberate indifference to Plaintiff's serious medical needs.  Cataract surgery is an elective surgery, and Plaintiff did not meet the established BOP criteria for the procedure.  Plaintiff has not alleged any unconstitutional actions by the regional director. He has failed to state a claim for which relief can be **granted against**

Dr. Ballom.

### C. Warden Keffer

Plaintiff also fails to state a *Bivens* claim against Warden Keffer. First, the warden cannot be held liable in a *Bivens* action under the doctrine of respondeat superior. See Cronn v. Buffington, 150 F.3d 538, 544 (5th Cir. 1998); Abate, 993 F.2d at 110. A federal official acting in a supervisory position may only be held liable in two circumstances: (1) where the supervisor was personally involved in the constitutional violation or (2) where the supervisor "implement[ed] a policy so deficient that the policy itself act[ed] as a deprivation of a constitutional rights." Cronn, 150 F.3d at 544 (citing Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir. 1987)). In this case, Warden Keffer did not provide medical treatment. He relied on the decisions of: (a) the medical experts at USP-P, (b) the utilization committee, and (c) the regional medical director, Dr. Ballom. In fact, it was Warden Keffer's medical staff that actually **approved** Plaintiff's request for a surgical consult. It was the regional review committee that found that Plaintiff was not entitled to the elective procedure. Plaintiff does not allege that the warden implemented an unconstitutional policy. His claim against Warden Keffer should be dismissed.

### D. Dr. Joel D. Alexandre

Plaintiff alleges that, on July 17, 2009, he was examined by

Dr. Alexandre. Dr. Alexandre told Plaintiff that he did not think that Plaintiff would benefit from surgery. However, he said that he would write a report to the regional director and "present it in the best light possible." Plaintiff has not alleged deliberate indifference on the part of Dr. Alexandre. Plaintiff has alleged a disagreement with diagnosis and treatment, which does not constitute deliberate indifference, absent exceptional circumstances. See <u>Atkins v. Lofton</u>, 2010 WL 1507186, citing <u>Gobert v. Caldwell</u>, 463 F.3d 339, 346 (5th Cir. 2006). Moreover, according to Plaintiff's complaint, the decision was not up to Dr. Alexandre; rather, it was up to the regional medical director as to whether Plaintiff qualified for the elective procedure.

### E. Mr. Smith

Plaintiff alleges that on June 21, 2009, Mr. Smith told him that Plaintiff could get the cataract surgery if his family was willing to pay for it. However, later, Mr. Smith informed Plaintiff that BOP Policy actually **did not** allow for that. [Doc. #1-3, p.2, #1-4, p.28] Plaintiff has not alleged deliberate indifference on the part of Mr. Smith. He has only alleged that Mr. Smith misinformed Plaintiff about whether his family could pay for the elective procedure. Plaintiff's claim against Mr. Smith is frivolous.

### F. Charles Tisdale

Finally, Plaintiff names Charles Tisdale as a defendant. He

alleges that on March 16, 2009, while Plaintiff was at sick call complaining of eye problems, he asked Physician Assistant Tisdale if his family could pay for the cataract surgery. Plaintiff alleges that Tisdale informed him that was not possible. Tisdale also stated that he was not completely certain, but he thought it was BOP policy that as long as Plaintiff had one good eye, then the procedure would be denied. [Doc. #1-3, p.1/3] Plaintiff has failed to allege deliberate indifference on the part of Physician Assistant Tisdale. Rather, Plaintiff has alleged that Tisdale consistently gave him ibuprofen for pain and made several referrals of Plaintiff to the optometrist. Rather than a denial of medical care, Plaintiff has actually alleged numerous provisions of medical care by Tisdale. There are no allegations that Tisdale ignored a serious risk or subjectively intended for Plaintiff to suffer harm.

## Conclusion

Ultimately, Plaintiff alleges that he is being denied an elective procedure that, it seems, would only be approved by the BOP if Plaintiff suffered from cataracts with loss of vision in both eyes. From what Plaintiff has alleged, Plaintiff has one good eye and one bad eye. [Doc. #1-4, p.26] Plaintiff alleges, and his exhibits support, that USP-P staff has consistently treated his symptoms and referred him to optometrists and ophthalmologists[2].

---

[2] Doc. #1-4, p.2,4,5-10,15-16,20-21

USP-P had even approved him for a surgical consultation[3]; however, the regional medical director overruled the recommendation by USP-P, not because of a subjective intent to cause harm, but because Plaintiff simply did not meet the criteria for the elective surgery[4].

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's civil rights action against these defendants be **DISMISSED WITH PREJUDICE** as frivolous and failing to state a claim pursuant to 28 U.S.C. §1915(e)(2)(B). *To the extent that Plaintiff's condition has worsened and he seeks injunctive relief or damages against the staff at his current facility, Plaintiff can file suit in the district court for the district in which he is incarcerated.*

## Objections

Under the provisions of 28 U.S.C. §636(b)(1)©) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to file written objections to the proposed factual

---

[3] Doc.#1-4, p.9 ("Surgery Consultation has been Approved"), p.21 ("Approved by FCC Pollock - Send to Regional Clinical Director for Approval"), p.27 ("Refer for cataract surgery")

[4] Doc. #1-4, p.19, 25, 30-31

12

finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglas v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED at Alexandria, Louisiana, this 23rd day of July, 2010.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE